**RECORD IMPOUNDED**

---

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

---

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1590-16T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

S.A.I.,

    Defendant-Appellant,

and

M.P.,

    Defendant.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF N.A.P.,

    Minor.

_____

        Submitted October 3, 2017 — Decided October 13, 2017

        Before Judges Yannotti, Carroll and Mawla.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Mercer County,
        Docket No. FG-11-0044-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Louis W. Skinner, Designated Counsel, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Melvina Fennell, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Melissa R. Vance, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant S.A.I., the biological mother of N.A.P., born in September 2014, appeals from the October 28, 2016 Family Part judgment that terminated her parental rights to the child. The judgment also terminated the parental rights of the child's biological father, defendant M.P., who does not appeal. Defendant contends that plaintiff New Jersey Division of Child Protection and Permanency (Division) failed to prove all four prongs of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. The Law Guardian supported termination before the trial court and, on appeal, joins the Division in urging us to affirm. Having considered the parties' arguments in light of the record and applicable legal standards, we affirm.

I.

We will not recite in detail the history of the Division's involvement with defendant and N.A.P. Instead, we incorporate by reference the factual findings set forth in Judge Audrey P. Blackburn's detailed October 28, 2016 oral opinion. We summarize the most pertinent facts to lend context to the legal analysis that follows.

Defendant suffers from a long-standing history of substance abuse and mental health issues. She has used heroin since 2002, interspersed with short periods of sobriety. Although the Division provided defendant with a wide variety of services, she has yet to maintain long-term sobriety or achieve any of her parenting objectives, such as obtaining employment or housing. She has also engaged in a pattern of willful lack of contact with N.A.P. for sustained periods of time.

N.A.P. tested positive for opiates and methadone at birth. Consequently, he was placed in the hospital's neonatal intensive care unit and then released to the care of defendant's mother, M.I., who was required to supervise contact between defendant and the child. In November 2014, defendant admitted to a heroin relapse and tested positive for opiates and methadone. Shortly thereafter, defendant took N.A.P. to the home of parental relatives. In February 2015, the Division received a call

reporting that defendant and M.P. had been using drugs every day since Christmas 2014, while N.A.P. was in their care.

The Division sought, and was awarded, custody, care, and supervision of N.A.P. Defendant and M.P. were offered services related to their substance abuse, including supervised visitation predicated upon them maintaining sobriety. N.A.P. was removed from the home on February 25, 2015, and placed with an aunt and uncle, with whom he continues to reside.

In March 2015, defendant entered an inpatient treatment program in Florida. She was discharged the next month for noncompliance. In May 2015, defendant requested assistance from the Division in finding a sober living home. In June, she began treatment at Catholic Charities Family Growth Program in Trenton. Around this time, the Division approved defendant's mother, M.I., to supervise her visitation with N.A.P. The Division subsequently ceased this visitation after discovering that M.I. was allowing defendant to have overnight visits and was not supervising defendant's contact with N.A.P., contrary to court orders. The Division then referred defendant to Legacy Reunification Services for supervised visits. Legacy also offered individual therapy and parenting classes. However, defendant missed several intake appointments at Legacy and several counseling appointments at

Catholic Charities. As a result, she was terminated from both programs.

In November 2015, the Division held a family team meeting with N.A.P.'s aunt and uncle. N.A.P. had no visits with either of his parents at this time, and their whereabouts were unknown. At the meeting, N.A.P.'s aunt and uncle committed to caring for him on a long-term basis. The Division's focus then moved from pursuing care and supervision of N.A.P. to termination of parental rights and adoption.

In March 2016, the Division classified defendant's status as "missing." She was located the following month in the Bluestone Recovery program in California. She had used heroin on a daily basis for six months prior to her enrollment in Bluestone. She also used cocaine on a weekly basis during four of those prior six months. Defendant completed the program in California, and was released with the expectation that she would attend outpatient substance abuse treatment at least once a week, attend NA meetings, maintain contact with her NA sponsor, and reside in a sober living home. After discharge, defendant moved to Pennsylvania to live with her sister. As of August 2016, when the guardianship trial commenced, she had not met the expectations of the Bluestone program.

During her time at Bluestone, from approximately April to August 2016, defendant had only one contact with N.A.P., when the Division flew her to New Jersey for a psychological and bonding evaluation. The psychological evaluation revealed defendant had a borderline deficiency IQ score, no coping skills, unpredictable anger, and an elevated presence of bipolar traits including moodiness, erratic behavior, and instability. The Division's expert psychologist testified that these traits have an impact upon defendant's ability to parent because she cannot remain calm under stress. During the bonding evaluation, N.A.P. cried continuously while separated from his resource parents. When defendant attempted to show affection toward N.A.P. to stop his crying, he hit her in the face.

The Division's expert concluded that: N.A.P. had no attachment to defendant; defendant would not be able to safely parent N.A.P. in the near future; and defendant required intense therapy and substance abuse treatment. In contrast, the resource parents were meeting N.A.P.'s developmental needs; he shared a strong attachment with them; and they were his psychological parents. The expert opined that delay in permanency and removing N.A.P. from their home would be detrimental to his psychological functioning.

Judge Blackburn found the testimony of the Division's expert and caseworkers at the guardianship trial credible, and she adopted their testimony. In contrast, the judge gave "little weight" to defendant's expert psychologist. The judge explained that the defense expert relied on inaccurate information from defendant about her period of sobriety, and did not conduct a bonding evaluation before recommending that services continue for defendant's future reunification with N.A.P.

Based on these findings, Judge Blackburn concluded the Division proved by clear and convincing evidence the four prongs of the best interests test, codified in N.J.S.A. 30:4C-15.1(a), and defendant's parental rights to N.A.P. should therefore be terminated. This appeal followed.

## II.

The scope of our review on an appeal from an order terminating parental rights is limited. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (citing In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). We will uphold a trial judge's factfindings if they are "supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014) (citing N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). No deference is given to the court's "interpretation of the law," which is reviewed de novo.

D.W. v. R.W., 212 N.J. 232, 245-46 (2012) (citing N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010); Balsamides v. Protameen Chems., 160 N.J. 352, 372 (1999)).

We "accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2014) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." E.P., supra, 196 N.J. at 104 (quoting G.L., supra, 191 N.J. at 605). We also accord deference to the judge's credibility determinations "based upon his or her opportunity to see and hear the witnesses." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88 (App. Div. 2006) (citing Cesare, supra, 154 N.J. 394 at 411-13), certif. denied, 190 N.J. 257 (2007).

When terminating parental rights, the court focuses on the "best interests of the child standard" and may grant a petition when the four prongs set forth in N.J.S.A. 30:4C-15.1(a) are established by clear and convincing evidence. In re Guardianship of K.H.O., 161 N.J. 337, 347-48 (1999). "The four criteria

enumerated in the best interests standard are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." Id. at 348.

Defendant contends there was insufficient evidence supporting the court's findings on each of the four prongs of the best interests standard. After reviewing defendant's arguments in light of the record and applicable legal principles, we are convinced that there is substantial credible evidence supporting the court's findings of fact and determination that the Division established by clear and convincing evidence under N.J.S.A. 30:4C-15.1(a) that it was in N.A.P.'s best interest to terminate defendant's parental rights. We add the following comments.

A. Prong One

The first prong of the best interests of the child standard requires the Division to establish that "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship." N.J.S.A. 30:4C-15.1(a)(1). "[T]he Division must prove harm that 'threatens the child's health and will likely have continuing deleterious effects on the child.'" N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 25 (2013) (quoting K.H.O., supra, 161 N.J. at 352).

Defendant argues that although N.A.P. tested positive for opiates and methadone at birth, there is no evidence he suffered any physical, cognitive, or developmental harm attributable to her drug use. Defendant further contends she can parent the child with assistance, and her inability to obtain stable housing was due to poverty alone.

We are not persuaded by defendant's arguments. It is well settled that the Division need not demonstrate actual harm in order to satisfy prong one. N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 440 (App. Div. 2001), certif. denied, 171 N.J. 44 (2002). Rather, the focus under the first prong is not on any "single or isolated harm," but rather on "the effect of harms arising from the parent-child relationship over time on the child's health and development." K.H.O., supra, 161 N.J. at 348 (citing N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 604-10 (1986)). The harm may be established by "a delay in establishing a stable and permanent home." In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999).

Furthermore, "[a] parent's withdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." Id. at 379 (citing K.H.O., supra, 161 N.J. at 352-54). Additionally, a parent's "persistent failure to perform any parenting functions

and to provide . . . support for [the child] . . . constitutes a parental harm to that child arising out of the parental relationship [that is] cognizable under N.J.S.A. 30:4C-15.1(a)(1) and (2)."  D.M.H., supra, 161 N.J. at 380-81 (citing K.H.O. supra, 161 N.J. at 352-54).

Here, the record establishes that defendant's relationship with N.A.P. caused the child harm.  N.A.P. was born with drugs in his system.  More importantly, defendant relapsed thereafter, and used drugs daily while caring for her infant child.  The Division removed N.A.P. some five months later because defendant could not provide him with a safe and stable home.  As of the time of the guardianship trial, defendant had yet to maintain consistent sobriety or achieve any parenting goals, such as securing employment or housing.  Defendant also failed to consistently visit the child, including a lengthy period from August 2015 to July 2016, thereby causing N.A.P. additional harm.  Accordingly, the court correctly found that the Division established harm under the first prong of the best interests standard.

B. Prong Two

Prong two requires the Division to prove that the parent is unable or unwilling to eliminate the harm that led to the child's removal, and that a delay in permanent placement will cause further harm.  N.J.S.A. 30:4C-15.1(a)(2).  "The second prong, in many

ways, addresses considerations touched on in prong one." F.M., supra, 211 N.J. at 451. The focus is on parental unfitness. K.H.O., supra, 161 N.J. at 352; D.M.H., supra, 161 N.J. at 378-79. In considering this prong, the court should determine whether it is reasonably foreseeable that the parent can cease to inflict harm upon the child. A.W., supra, 103 N.J. at 607. The second prong may be satisfied

> by indications of parental dereliction and irresponsibility, such as the parent's continued or recurrent drug abuse, the inability to provide a stable and protective home, the withholding of parental attention and care, and the diversion of family resources in order to support a drug habit, with the resultant neglect and lack of nurture for the child.
>
> [K.H.O., supra, 161 N.J. at 353.]

"Prong two may also be satisfied if 'the child will suffer substantially from a lack of . . . a permanent placement and from the disruption of [the] bond with foster parents.'" F.M., supra, 211 N.J. at 451 (quoting K.H.O., supra, 161 N.J. at 363).

Defendant argues that the Division failed to show that she is unwilling or unable to eliminate the harm to N.A.P. She concedes she did not establish a bond with N.A.P., but asserts that her focus on addressing her substance abuse issues provides a reasonable explanation for not doing so.

The evidence, however, supports the court's finding that defendant was unable and unwilling to eliminate the risk of harm to N.A.P. As we have noted, defendant is unable to provide N.A.P. with a safe and stable home, either now or in the foreseeable future. Even after completing the Bluestone program in California, she failed to enroll in after-care treatment or demonstrate a continued commitment to maintaining long-term sobriety. Additionally, based on the testimony of the Division's expert psychologist, the court properly determined that a delay in permanency would cause N.A.P. further harm.

C. <u>Prong Three</u>

The third prong of the best interests of the child standard requires the Division to establish that it made reasonable efforts to help the parent correct the circumstances that led to the child's removal from the parent's care, and "considered alternatives to termination of parental rights." <u>N.J.S.A.</u> 30:4C-15.1(a)(3). "The diligence of [the Division's] efforts on behalf of a parent is not measured by their success. . . . These efforts must be assessed against the standard of adequacy in light of all the circumstances of a given case." <u>D.M.H.</u>, <u>supra</u>, 161 <u>N.J.</u> at 393.

We are not persuaded by defendant's argument that the Division failed to make reasonable efforts to bring about family

A-1590-16T3

reunification. She asserts that reunification was recommended if she received adequate housing, financial support, and engaged in treatment. She argues, unconvincingly, that the Division did not offer her these services.

"Reasonable efforts" means "attempts by an agency authorized by the [D]ivision to assist the parents in remedying the circumstances and conditions that led to the placement of the child and in reinforcing the family structure, including, but not limited to:" developing a plan for reunification; providing agreed upon services; informing the parent of the child's progress; and "facilitating appropriate visitation." N.J.S.A. 30:4C-15.1(c). "Whether particular services are necessary in order to comply with the [reasonable] efforts requirement must [] be decided with reference to the circumstances of the individual case before the court . . . ." D.M.H., supra, 161 N.J. at 390. The Division's efforts need not be successful to be reasonable. F.M., supra, 211 N.J. at 452; D.M.H., supra, 161 N.J. at 393.

The record reflects that defendant received supervised visitation, which she routinely either failed to attend or comply with. The Division also offered her a host of services, including evaluations, inpatient referrals, treatment, and therapy. Defendant chose to pursue substance abuse services in Florida and California, instead of utilizing the services the Division could

have provided her in New Jersey while also exercising visitation with N.A.P. We are therefore satisfied the court correctly determined that the Division established by clear and convincing evidence the third prong of the best interests standard. N.J.S.A. 30:4C-15.1(a)(3).

D. Prong Four

The fourth prong of the best interests of the child standard requires the Division to show that termination of defendant's "parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). Termination of parental rights poses a risk to children due to the severing of the relationship with their natural parents, but it is based "on the paramount need the children have for permanent and defined parent-child relationships." K.H.O., supra, 161 N.J. at 355 (quoting In re Guardianship of J.C., 129 N.J. 1, 26 (1992)).

Thus, "the fourth prong of the best interests standard [does not] require a showing that no harm will befall the child as a result of the severing of biological ties." Ibid. The court must consider and balance whether "the child will suffer a greater harm from the termination of ties with [his or] her natural parents than from the permanent disruption of [his or] her relationship with [his or] her foster parents." Ibid.

Here, there is sufficient credible evidence in the record supporting Judge Blackburn's finding that the Division established prong four of the best interests standard. Defendant contends the judge erroneously focused on N.A.P.'s relationship with the foster parents, and mistakenly found that termination of defendant's parental rights was necessary for N.A.P. to achieve permanency. We reject these arguments because the court found the Division's expert, who conducted the only bonding evaluation, to be a credible witness. The expert testified that N.A.P. had no bond with defendant but had a strong bond with his resource parents. The expert concluded that N.A.P. would not be harmed if defendant's parental rights were terminated, but would experience harm if removed from his resource parents. This clear and convincing evidence supported the court's finding that termination of defendant's parental rights will not do more harm than good.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1590-16T3